UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. |
| | ) |
| FIFTY-NINE THOUSAND DOLLARS IN | ) |
| U.S. CURRENCY ($59,000.00), | ) |
| | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT OF FORFEITURE

COMES NOW, Plaintiff, the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Jonathan A. Clow, Assistant United States Attorney, for said district, and for its Verified Complaint for Forfeiture states as follows:

## NATURE OF THE ACTION

1. This is a civil action *in rem* brought by the United States of America seeking forfeiture of all right, title, and interest in the above-captioned defendant property pursuant Title 21, United States Code, Section 881(a)(6) and Title 18, United States Code, Sections 981(a)(1)(A) and (C).

2. The defendant property was seized by law enforcement on or about May 5, 2021, and is described more fully as fifty-nine thousand dollars in U.S. currency ($59,000.00) (the "defendant property").

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345, 1355, and 1395.

1

4. Venue is proper pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because the acts and omissions giving rise to forfeiture took place in the Eastern District of Missouri. Venue is also proper pursuant to Title 28, United States Code, Section 1395(b) because the defendant currency was seized in the Eastern District of Missouri.

## STATUTORY FRAMEWORK

5. Title 21, United States Code, Section 881(a)(6) authorizes the civil forfeiture of "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

6. Title 18, United States Code, Section 1956(a)(1)(A)(i) criminalizes conducting a transaction, including transfer, delivery, or other disposition, knowing that such transaction represents the proceeds of some form of unlawful activity and that in fact involves the proceeds of a specific unlawful activity, including violations of the Controlled Substances Act, with the intent to promote the carrying on of the specified unlawful activity.

7. Title 18, United States Code, Section 1956(a)(1)(B) criminalizes conducting a transaction, including transfer, delivery, or other disposition, knowing that such transaction represents the proceeds of some form of unlawful activity and that in fact involves the proceeds of a specific unlawful activity, including violations of the Controlled Substances Act, knowing that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

8. Pursuant to Title 18, United States Code, Section 981(a)(1)(A), any property, real

or personal, involved in a transaction or attempted transaction in violation of section 1956 of Title 18, or any property traceable to such property, is subject to civil forfeiture.

9. Title 18, United States Code, Section 1952 criminalizes traveling in interstate commerce with the intent to distribute the proceeds of any unlawful activity, including a business enterprise involving controlled substances, or otherwise promoting, managing, establishing, carry on, or facilitating the promotion, management, establishment, or carrying on, of such unlawful activity.

10. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1952 is subject to civil forfeiture.

## FACTS GIVING RISE TO THE FORFEITURE

11. Angel Morales ("Morales") is a resident of Denver, Colorado.

12. On or about May 5, 2021, Morales was travelling in a black Dodge Ram pick-up truck ("Dodge Ram") headed west on Interstate 44 within the Eastern District of Missouri.

13. At approximately 12:30 p.m., a DEA task force officer observed the Dodge Ram near the 182-mile marker. The vehicle had an obstructed temporary tag.

14. The officer conducted a traffic stop of the Dodge Ram. Morales was driving the vehicle, and Maria Gonzalez ("Gonzalez"), also a Colorado resident, was in the front passenger seat. A small child was in the backseat.

15. The officer approached the Dodge Ram and made contact with Morales. The officer asked Morales for his driver's license. Morales stated that he did not have a driver's license.

16. At the officer's request, Morales agreed to exit the Dodge Ram and accompany the officer to the rear of the vehicle. The officer asked Morales about his travel plans. Morales stated

that he had driven to St. Louis with Gonzalez and their child to "hang out" and they were on their way back to Denver, Colorado.

17. The officer approached the Dodge Ram and asked Gonzalez for her identification. The officer then asked about her travel plans, and Gonzalez said that she and her boyfriend, Morales, went to St. Louis to visit her mother. The officer asked Gonzalez what part of St. Louis she visited, and she said she did not know. The officer asked if she had an address for her mother, and she said she did not. Gonzalez said they stayed in a hotel during their visit. The officer asked Gonzalez to where she and Morales were traveling, and she said El Paso, Texas.

18. The officer then returned to the rear of the Dodge Ram and asked Morales if he and Gonzalez had visited anyone in St. Louis. He said they did not.

19. The officer asked Morales why they were travelling on Interstate 44 instead of Interstate 70. Upon information and belief, Interstate 70 is a direct route to Denver, Colorado from St. Louis, Missouri. Morales said they wanted to try a different route.

20. The officer asked Morales if they were travelling with anything illegal or any large amounts of U.S. currency. Morales said no.

21. The officer asked Morales for consent to search the Dodge Ram. Morales replied that it was not his truck. The officer explained that Morales was the driver and again asked for consent. Morales said he did not care but that the officer should ask Gonzalez because it was her truck.

22. The officer approached the Dodge Ram and asked Gonzalez if there was anything illegal or any large amounts of U.S. currency inside the Dodge Ram. Gonzalez said no.

23. The officer asked Gonzalez for consent to search the Dodge Ram, and she said yes.

24. The officer searched the Dodge Ram and discovered a mid-sized black carry-on

4

bag in the passenger side rear seat. The officer looked inside the bag and found two large, brick-shaped objects wrapped in gray duct tape.

25. The officer showed Morales what he found and asked if the brick-shaped objects wrapped in duct tape were U.S. currency. Morales said they were U.S. currency, but that the U.S. currency did not belong to them.

26. The U.S. currency was seized and was comprised primarily of $20 denominations, which is indicative of drug proceeds or cash earmarked for the purchase of drugs.

27. The officer advised Morales and Gonzalez of their Miranda rights. Both Morales and Gonzales acknowledged their Miranda rights and expressed that they wished to cooperate.

28. Morales then told the officer that Gonzalez did not know about the U.S. currency and that she stayed in the hotel room when he was given the two bundles of currency. Morales further told the officer that he was going to get paid to deliver the U.S. currency to Denver, Colorado, and that he had received the U.S. currency from a man in Kirkwood, Missouri.

29. Other officers arrived at the scene and transported the Dodge Ram to the Phelps County Sheriff's Department.

30. During the transport, the officer asked Morales about the U.S. currency. Morales said that this was his first trip to St. Louis and that he regretted it. He said a man met him outside of the Best Western hotel in Kirkwood, Missouri and handed him the two bundles of currency. He again reiterated that Gonzalez had no knowledge of the U.S. currency.

31. The officer asked Morales if he brought anything from Denver in exchange for the U.S. currency. He said he did not but believed that the man was in the cocaine business.

32. Upon arrival, the Dodge Ram was searched at the Phelps County Sheriff's Department. During the search, officers discovered that the temporary tag on the vehicle expired

in 2020.

33. At the Phelps County Sheriff's Department, Morales still expressed that he wished to cooperate and continued to waive his Miranda rights. Morales continued to speak with the officer, now accompanied by another detective. Morales told the officers that on Monday, May 3, 2021, he was contacted by an individual about making a trip to St. Louis, Missouri. Morales asked Gonzalez if he could borrow the Dodge Ram for the trip, and she said she preferred to travel with him.

34. Morales said they drove all the way through from Denver, Colorado to St. Louis, Missouri. On Tuesday, May 4, 2021, Morales and Gonzalez got a hotel room at the Best Western in Kirkwood, Missouri.

35. Morales said he then contacted the man who was supposed to meet him to give him the U.S. currency. The man arrived at the hotel at around 11:30 p.m. that night. Morales said the man gave him the bundles of U.S. currency, and Morales placed them in the Dodge Ram.

36. Morales said he and Gonzalez left St. Louis on the morning of Wednesday, May 5, 2021, to drive back to Denver, Colorado. Morales said that, in the past, after returning to Denver, he would be told where to go with the U.S. currency. Morales said this trip was at least his fourth trip from Denver to pick up U.S. currency and return it to Denver. Morales said that he usually receives $2,500.00 for each trip.

37. Morales said he does not take narcotics with him when he travels because he does not want to get caught with it. Morales said he will only travel with currency, and he thinks, but was not sure, that the currency is from sales of cocaine.

38. Officers then spoke with Gonzalez at the Phelps County Sheriff's Department. Gonzalez said she still understood her Miranda rights and was willing to help with the

6

investigation. Gonzalez said she is in a romantic relationship with Morales. Gonzalez said Morales contacted her earlier that week to borrow her vehicle, and she told him that she would like to travel with him.

39. Gonzalez said she and Morales left Denver in the morning and drove straight through to St. Louis. Gonzalez made a reservation at the Best Western in Kirkwood. She said Morales went to get them food at around 11:00 or 11:30 p.m. She said she did not see Morales meet anyone.

40. Gonzalez said she and Morales left the next morning to drive back to Denver. She told the officers she did not know what type of work Morales was doing and she did not ask a lot of questions. Gonzalez said this trip was the third time she travelled with him. Gonzalez said on the first two trips they went to El Paso, Texas. Gonzalez said it was a similar situation, but she does not ask questions.

41. Morales and Gonzalez both gave consent to search their phones.

### *COUNT ONE – FORFEITURE*
### *21 U.S.C. § 881(a)(6)*

42. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 41 above as if fully set forth herein.

43. The defendant property is bulk U.S. currency that was discovered by law enforcement officers in bundles, wrapped in duct tape, in denominations and a manner that is consistent with drug trafficking. In addition, the defendant property was found concealed in a bag in a vehicle occupied by Morales, who admitted that he was couriering drug money.

44. Based on the foregoing, the defendant currency is subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6) as money furnished or intended to be furnished in exchange for a controlled substance, as proceeds traceable to such an exchange, and as money

used or intended to be used to facilitate a violation of the Controlled Substances Act.

### COUNT TWO – FORFEITURE
### 18 U.S.C. § 981(a)(1)(A)

45. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 41 above as if fully set forth herein.

46. The defendant currency is proceeds of an unlawful activity involving controlled substances and was transported through the Eastern District of Missouri by Morales with the intent to promote the carrying on of, and to conceal or disguise the nature, location, source, ownership or control of, a specified unlawful activity.

47. Based on the foregoing, the defendant currency is subject to forfeiture, pursuant to Title 18, United Stated Code, Section 981(a)(1)(A) as property involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956, or as property traceable to such property.

### COUNT THREE – FORFEITURE
### 18 U.S.C. § 981(a)(1)(C)

48. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 41 above as if fully set forth herein.

49. The defendant currency is proceeds of an unlawful activity involving controlled substances that travelled with Morales in interstate commerce with the intent to distribute it, and otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of an unlawful activity involving controlled substances.

50. Based on the foregoing, the defendant currency is subject to forfeiture, pursuant to Title 18, United Stated Code, Section 981(a)(1)(C) as property that constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1952.

**PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that a Warrant for Arrest be issued in rem for the defendant currency and the defendant currency be condemned and forfeited to the United States of America, in accordance with the provisions of law; and that the United States of America be awarded its costs in this action, and have such other relief as provided by law and the nature of the case may require.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


*/s/ Jonathan A. Clow*
JONATHAN A. CLOW, #68003(MO)
Assistant United States Attorney
111 South 10th Street, Suite 20.333
Saint Louis, Missouri 63102
Telephone:   (314) 539-2200
Facsimile:    (314) 539-2777
Jonathan.Clow@usdoj.gov

## VERIFICATION

I, Carmelo Crivello, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Officer with the Drug Enforcement Administration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _Oct. 1, 2021_
(date)

_____
CARMELO CRIVELLO
Task Force Officer
Drug Enforcement Administration